1
2
3
4
5
6
7
8                       IN THE UNITED STATES DISTRICT COURT
9                     FOR THE EASTERN DISTRICT OF CALIFORNIA
10  MALIK REED,
11              Plaintiff,                    No. CIV S-10-2133 GEB EFB PS
12      vs.
13  WELLS FARGO HOME MORTGAGE INC.;           ORDER AND
    FIRST AMERICAN LOANSTAR TRUSTEE           FINDINGS AND RECOMMENDATIONS
14  SERVICES; NEW CENTURY MORTGAGE
    CORPORATION; and US BANK NATIONAL
15  ASSOCIATION,
16              Defendants.
                                      /
17
18      This case, in which plaintiff is proceeding *pro se*, is before the undersigned pursuant to

19  Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1). Pending before

20  the undersigned are (1) defendant First American Trustee Servicing Solutions, LLC, f/k/a First

21  American Loanstar Trustee Services, LLC's motion to dismiss plaintiff's complaint, Dckt. No. 9;

22  (2) defendant Wells Fargo Home Mortgage, Inc.'s motion to dismiss plaintiff's complaint, Dckt.

23  No. 11; and (3) plaintiff's motion for a temporary restraining order, Dckt. No. 24.

24  I.    Background

25      In this action, plaintiff challenges the foreclosure sale of his home. He alleges that he

26  was "misled and taken advantage of" and that defendants engaged in fraud and unlawful, unfair,

1  and deceptive business practices during and after the origination of his mortgage loan. Dckt. No.
2  1 at 1-2. He alleges that the mortgage loan at issue was created by America's Servicing Co., but
3  that in order to deceive regulators and plaintiff, plaintiff's promissory note was unlawfully sold
4  to Wall Street investors. *Id.* at 3. He further alleges that defendants wrongfully sold his property
5  at a trustee's sale without producing the original note and without being the holder in due course,
6  and he alleges that he never actually received a loan. *Id.* at 2; ¶¶ 8, 15. Plaintiff's complaint
7  alleges claims for fraud; violations of the Truth in Lending Act ("TILA"); violations of the
8  Federal Fair Debt Collection Practices Act ("FDCPA") and the California Rosenthal Fair Debt
9  Collection Practices Act ("Rosenthal Act"); wrongful foreclosure; breach of the covenant of
10 good faith and fair dealing; and declaratory relief. *Id.*

11       Specifically, plaintiff alleges that he was the owner of the real property at issue in this
12 action ("the subject property"); that on December 15, 2005, he executed and delivered to
13 defendant New Century Mortgage Corporation ("New Century") a written promissory note in the
14 amount of $365,750.00 for the subject property; and that Wells Fargo Home Mortgage, Inc., dba
15 America's Servicing Co. ("Wells Fargo") served as plaintiff's loan servicer. Compl. ¶¶ 1, 5;
16 Loanstar's Req. for Jud. Notice, Dckt. No. 9-1, Ex. A; Wells Fargo's Req. for Jud. Notice, Dckt.
17 No. 11, Ex. 1.[1] As security for the note, plaintiff executed and delivered to New Century a deed
18 of trust dated January 11, 2006 in the amount of $365.750.00. Compl. ¶ 6; Dckt. No. 9-1, Ex. A;
19 Dckt. No. 11, Ex. 1. The deed of trust was recorded in Sacramento County on January 11, 2006.
20 Compl. ¶ 6; Dckt. No. 9-1, Ex. A; Dckt. No. 11, Ex. 1. First American Loanstar Trustee
21 Servicing LLC ("Loanstar") is the successor trustee under the deed of trust pursuant to a

---

[1] Loanstar and Wells Fargo's requests for judicial notice of the exhibits cited herein are granted. Judicial notice may be taken of "adjudicative facts" (e.g., court records, pleadings, etc.) and other facts not subject to reasonable dispute and either "generally known" in the community or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). A court may also take judicial notice of court records. *See MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Accordingly, the court may consider those documents on this Rule 12(b)(6) motion.

Substitution of Trustee recorded in Sacramento County on January 23, 2009. Dckt. No. 9-1, Ex. C. The beneficial interest in the deed of trust was assigned to U.S. Bank pursuant to an assignment deed of trust recorded in Sacramento County on March 4, 2009. Dckt. No. 9-1, Ex. D; Dckt. No. 11, Ex. 3.

On December 10, 2008, Loanstar recorded a "Notice of Default and Election to Sell" and a "Declaration of Compliance" under California Civil Code section 2923.5 in Sacramento County. Dckt. No. 9-1, Ex. B; Dckt. No. 11, Ex. 2. Thereafter, on December 21, 2009, Loanstar recorded a "Notice of Trustee's Sale," noticing the sale for January 11, 2010. Compl. ¶ 7; Dckt. No. 9-1, Ex. E; Dckt. No. 11, Ex. 5; *see also* Dckt. No. 11, Exs. 4, 6. The subject property was then sold at a Trustee's Sale on February 11, 2010, and title to the subject property was conveyed to U.S. Bank. Dckt. No. 9-1, Ex. F; Dckt. No. 11, Ex. 7.

On February 19, 2010, plaintiff filed a complaint in Sacramento County Superior Court against defendants American's Servicing Co. and Loanstar, to enjoin foreclosure, for declaratory relief, and an accounting. Dckt. No. 9-1, Ex. G. Loanstar filed a demurrer, plaintiff opposed it, and on July 6, 2010, the state court sustained the demurrer without leave to amend. Dckt. No. 9-1, Exs. H, I, J. Then, on July 6, 2010, the state court entered judgment in Loanstar's favor. Dckt. No. 9-1, Ex. K.

On August 10, 2010, plaintiff filed a complaint herein against Wells Fargo, Loanstar, New Century, and U.S. Bank. Dckt. No. 1. According to plaintiff, the notice of default and election to sell were based on Loanstar's contention that plaintiff had breached the obligation secured by the deed of trust by failing to pay $409,072.76, and that Loanstar, as beneficiary, elected to sell the trust property to satisfy that obligation. *Id.* ¶ 7. Plaintiff contends that he is not in breach of that obligation since Loanstar is not the "holder in due course" and improperly refused plaintiff's tender offer to pay upon Loanstar's validation of the debt. *Id.* ¶ 8. Plaintiff contends that the debt is invalid under the FDCPA and the Rosenthal Act, and that defendants have failed to properly respond to plaintiff's offer and have failed to validate the purported debt.

3

1  *Id.* Plaintiff contends that all of the defendants acted in concert and ratified the conduct of the
2  other defendants. *Id.* ¶¶ 9, 13.

3  II.     Motions to Dismiss Plaintiff's Complaint

4  Defendants Loanstar and Wells Fargo both move to dismiss plaintiff's complaint for
5  failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dckt.
6  Nos. 9, 11. Defendants also contend that plaintiff's complaint fails to comply with Rules 8(a)
7  and 8(d) in that the complaint does not present a "short and plain statement" of plaintiff's claims
8  and is not "simple, concise and direct," and that plaintiff has not pled fraud with particularity, as
9  required by Rule 9(b). *Id.*

10  A.     Standards

11  To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint
12  must contain more than a "formulaic recitation of the elements of a cause of action"; it must
13  contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell*
14  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more
15  . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of
16  action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-
17  236 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to
18  'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949
19  (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff
20  pleads factual content that allows the court to draw the reasonable inference that the defendant is
21  liable for the misconduct alleged." *Id*. Dismissal is appropriate based either on the lack of
22  cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal
23  theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

24  In considering a motion to dismiss, the court must accept as true the allegations of the
25  complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe
26  the pleading in the light most favorable to the party opposing the motion, and resolve all doubts

in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

The court may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

    B.    <u>Plaintiff's Claims</u>

        1.    <u>Fraud, Failure of Consideration, and Usury</u>

In his first claim for relief, plaintiff alleges that defendants "used deceit and deception in creating and maintaining through its entirety a fraudulent mortgage loan." Compl. ¶ 15.

1  Specifically, plaintiff contends that New Century fraudulently sold plaintiff's promissory note
2  for equal value and that therefore, in essence, plaintiff funded his own loan. *Id.* Plaintiff
3  contends that New Century then transferred and/or sold the fraudulent loan to Wells Fargo. *Id.*
4  Plaintiff alleges that although New Century and Wells Fargo represented to plaintiff that they
5  were going to fund a loan, they "did not in fact loan money to plaintiff." *Id.* Loanstar and Wells
6  Fargo move to dismiss plaintiff's fraud claim, arguing that under Federal Rule of Civil Procedure
7  9(b), fraud must be pled with particularity and that plaintiff's vague and general allegations do
8  not meet that standard. Dckt. No. 9 at 8; Dckt. No. 11 at 14-15. Loanstar also argues that there
9  are no fraud allegations whatsoever against Loanstar, and Wells Fargo points out that plaintiff
10 lacks any of the "who, what, when, where and how" required for alleging fraud against Wells
11 Fargo. Dckt. No. 9 at 8; Dckt. No. 11 at 16. Loanstar further argues that plaintiff has failed to
12 state a claim for failure of consideration or for usury. Dckt. No. 9 at 9.

13         Plaintiff's claims for fraud, failure of consideration, and usury must be dismissed.
14 Plaintiff's conclusory and nearly unintelligible fraud claim fails under Rule 9(b), which requires
15 fraud claims to be pled with particularity. To state a claim for fraud, a plaintiff must plead facts
16 specifically demonstrating "(a) misrepresentation; (b) knowledge of falsity (or scienter); (c)
17 intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."
18 *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003); *see generally* Cal. Civ. Code §§ 1709-10. "In
19 all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with
20 particularity." Fed. R. Civ. Proc. 9(b). The allegations must be "specific enough to give
21 defendants notice of the particular misconduct which is alleged to constitute the fraud charged so
22 that they can defend against the charge and not just deny that they have done anything wrong."
23 *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). In addition to the "time, place and
24 content of an alleged misrepresentation," a complaint "must set forth what is false or misleading
25 about a statement, and . . . an explanation as to why the statement or omission complained of was
26 false or misleading." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993, n.10 (9th Cir. 1999). The

complaint must also name the persons who made the allegedly fraudulent statements. *See Morris v. BMW of N. Am., LLC*, 2007 WL 3342612, at *3 (N.D. Cal. 2007) (citing *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 n.7 (9th Cir. 1994) (en banc)).

Here, plaintiff does not identify any specific misrepresentations or any facts about those purported misrepresentations. Indeed, the complaint fails to reference Loanstar at all in connection with plaintiff's fraud claim, and with regard to Wells Fargo, fails to state who allegedly made fraudulent representations on behalf of Wells Fargo, whether those speakers had authority to speak, how the alleged misrepresentations were made, or any of the other facts necessary to state a fraud claim. In other words, the complaint does not identify "'the who, what, when, where, and how'" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Moreover, plaintiff's fraud claim appears to be based on the theory that no money was actually ever loaned to him. *See* Compl. ¶ 15; Pl.'s Opp'n, Dckt. No. 19 at 4. However, that theory is belied by the deed of trust, which evidences that plaintiff was in fact loaned $365.750.00.[2] Dckt. No. 9-1, Ex. A; Dckt. No. 11, Ex. 1.

Plaintiff's claim for failure of consideration also appears to be based on plaintiff's theory that no money was loaned to plaintiff and that, therefore, no consideration was given in exchange for his loan obligations. However, as discussed above, that theory is belied by the deed of trust. The document evidences that plaintiff was, in fact, loaned $365.750.00, and was given the right to possess and hold title to the subject property in exchange for his loan obligations. Dckt. No. 9-1, Ex. A; Dckt. No. 11, Ex. 1.

---

[2] As Wells Fargo points out, plaintiff's argument that he in essence "funded his own loan," could be a variant on the long-discredited "vapor money" theory, as advanced in past years by fringe tax protestors or confidence artists running "eliminate your debt" scams. Dckt. No. 11 at 15, n.5. "The main premise [of the 'vapor money' theory] is that no enforceable debt accrues from a lender that funds a loan through wire transfers rather than through hard cash." *Frances Kenny Family Trust v. World Sav. Bank FSB*, 2005 WL 106792, at *1 (N.D. Cal. Jan. 19, 2005). However, that theory "has been squarely addressed and rejected by various courts throughout the country for over twenty years." *Id.* at 5 (citations omitted).

1  Finally, to the extent plaintiff attempts to state a claim for usury, the claim fails because
2  plaintiff does not allege facts demonstrating that any of the elements of a usury claim are
3  satisfied. "The essential elements of usury are: (1) The transaction must be a loan or
4  forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and
5  interest must be absolutely repayable by the borrower; and (4) the lender must have a willful
6  intent to enter into a usurious transaction." *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798 (1994)
7  (citations omitted). Here, plaintiff does not make any allegations about the loan's interest rate,
8  does not allege that the loan's interest rate was in excess of the statutory maximum rate, and does
9  not allege that defendants had a willful intent to enter into a usurious transaction with plaintiff.
10 In fact, plaintiff does not even allege that specific defendants charged plaintiff interest in
11 connection with the subject loan.

Therefore, plaintiff's fraud, failure of consideration, and usury claims must be dismissed.

### 2. Truth in Lending Act ("TILA")

In his second claim for relief, plaintiff alleges that defendants New Century and Wells Fargo violated TILA by failing to disclose and/or concealing "the vital fact that [New Century and Wells Fargo were] not making plaintiff a loan, but used 'check kiting.'" Compl. ¶ 16. Loanstar and Wells Fargo move to dismiss plaintiff's TILA claim, arguing that plaintiff's claim is time-barred; that plaintiff lacks standing since he has not tendered or offered to tender the amount due; and that his right of rescission terminated when the deed of trust was foreclosed and the subject property was sold. Dckt. No. 9 at 9-10; Dckt. No. 11 at 12-13, 19-21. Wells Fargo also argues that plaintiff's TILA claim is unintelligible and that "it is difficult to ascertain what exactly plaintiff is alleging by this claim." Dckt. No. 11 at 21. According to Wells Fargo, although plaintiff asserts conclusorily that Wells Fargo "used 'check kiting'" in funding the note, Compl. ¶ 16, plaintiff "has alleged no facts to support the conclusion that Wells Fargo engaged

////
////

8

in any such practice in servicing his loan."[3] *Id.* Moreover, Wells Fargo contends that even if there were any factual support for such a claim (which it says there is not), "such a practice would not constitute a fact required to be disclosed to a residential mortgage customer under TILA." *Id.*

Here, in addition to being nearly unintelligible and failing to allege any specific TILA violations,[4] plaintiff's purported TILA claim is barred by the statute of limitations. TILA is intended to protect consumers in credit transactions by requiring "meaningful disclosure of credit terms." 15 U.S.C. § 1601(a). A lender's violation of TILA allows the borrower to seek damages or to rescind a consumer loan secured by the borrower's primary dwelling. *Copeland v. Lehman Brothers Bank, FSB*, 2010 WL 2817173, at *5 (S.D. Cal. July 15, 2010). However, a plaintiff's damage claims relating to improper disclosures under TILA are subject to a one-year statute of limitations, 15 U.S.C. § 1640(e), which runs from the time the loan transaction is consummated. *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir.1986); *see also Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (failure to make the required disclosures under TILA occurs at the time the loan documents were signed). Rescission claims under TILA "shall expire three years after the date of the consummation of the transaction or upon the sale of the property, whichever occurs first,"15 U.S.C. § 1635(f). The right to rescission under TILA expires three days after the necessary disclosures are provided to the borrower. 15 U.S.C. § 1635(a).

Although equitable tolling of TILA claims may be appropriate "in certain circumstances," and can operate to "suspend the limitations period until the borrower discovers

---

[3] "Check kiting" refers to a practice by which a bank's customer either (1) "writ[es] a check against a bank account where funds are insufficient to cover it and hop[es] that before it is deposited the necessary funds will have been deposited," or (2) "[t]ransfer[s] funds between two or more banks to obtain unauthorized credit from a bank during the time it takes the checks to clear." *Black's Law Dictionary* 238 (6th ed. 1990).

[4] Again, it appears that the basis for plaintiff's purported TILA violations is his theory, which is belied by the deed of trust, that plaintiff funded his own loan. *See* Pl.'s Opp'n, Dckt. No. 19 at 4-5.

9

or had reasonable opportunity to discover the fraud or non-disclosures that form the basis of the TILA action," *King*, 784 F.2d at 914-15, when a plaintiff fails to allege facts demonstrating that he could not have discovered the alleged violations by exercising reasonable diligence, dismissal is appropriate. *Meyer*, 342 F.3d at 902-03 (refusing to apply equitable tolling to TILA claim because the plaintiff was in full possession of all loan documents and did not allege any concealment of loan documents or other action that would have prevented discovery of the alleged TILA violations); *see also Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir.1996) (finding that plaintiff was not entitled to equitable tolling of her TILA claim because "nothing prevented [plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements"). Since the loan at issue was consummated on January 11, 2006, but this action was not filed until August 10, 2010, and plaintiff has not alleged any facts supporting equitable tolling of the statute of limitations, plaintiff's TILA claim is barred by the statute of limitations and must be dismissed.

   3. <u>Federal Fair Debt Collection Practices Act ("FDCPA") and the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act")</u>

In his third claim for relief, plaintiff alleges that defendants violated the FDCPA and the Rosenthal Act, but does not include any factual allegations specific to defendants' conduct. Compl. ¶ 17. Loanstar and Wells Fargo move to dismiss plaintiff's FDCPA and Rosenthal Act claims, arguing that plaintiff cannot establish the elements of those claims, and that even if he could, any such claims would be time-barred. Dckt. No. 9 at 10-11; Dckt. No. 11 at 18-19. Here, plaintiff's claims for violation of the FDCPA and the Rosenthal Act are defective not only because they allege no facts that could support a finding that defendants violated the FDCPA or the Rosenthal Act, but also because the FDCPA and the Rosenthal Act do not apply to lenders or mortgage servicers. The FDCPA applies only to a "debt collector," defined as "a person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a. The definition explicitly excludes creditors as well as loan originators or assignees who obtained the right to collect on loan when it was not in default. 15 U.S.C. § 1692a(4), § 1692a(6)(A) or (B), § 1692a(ii) and (iii).

Additionally, to be liable under the Rosenthal Act, a defendant must be a "debt collector." *Izenberg v. ETS Services, LLC*, 589 F. Supp.2d 1193, 1199 (C.D. Cal. 2008) (citing *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)). A "debt collector" under the Rosenthal Act is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).

The "'activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the'" FDCPA or the Rosenthal Act. *Tina v. Countrywide Home Loans, Inc.*, 2008 WL 4790906, *6 (S.D. Cal. Oct. 30, 2008) (quoting *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002)); *see also Gamboa v. Trustee Corps*, 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009) ("the law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA or the FDC[P]A."); *Keen v. Am. Home Mortg. Serv., Inc*., 664 F. Supp. 2d 1086, 1095 (E.D. Cal. 2009).

In addition to failing allege the other necessary elements of FDCPA and Rosenthal Act claims, plaintiff does not and cannot allege that defendants are debt collectors within the meaning of the FDCPA or the Rosenthal Act. Accordingly, plaintiff's claim for violations of the FDCPA and the Rosenthal Act should be dismissed.

4. <u>Wrongful Foreclosure</u>

In his fourth claim for relief, plaintiff alleges that defendants unlawfully and wrongfully foreclosed without being the "holder in due course." Compl. ¶ 18; *see also* Dckt. No. 19 at 6. Loanstar and Wells Fargo move to dismiss this claim, arguing that plaintiff's "holder in due course" theory is not valid in California and that plaintiff has failed to allege tender of the

11

amount due. Dckt. No. 9 at 11-13; Dckt. No. 11 at 13-14, 21.

Defendants are correct that plaintiff's "holder in due course" theory, which is the only basis for plaintiff's wrongful foreclosure claim, is not cognizable under California law. California law "does not require possession of the note as a precondition to non-judicial foreclosure under a Deed of Trust." *Alicea v. GE Money Bank*, 2009 WL 2136969 at *2 (N.D. Cal. July 16, 2009); *see also De Valle v. Mortgage Bank of Cal.*, 2010 WL 1813505, at *1-2 (E.D. Cal. May 5, 2010); *Nool v. HomeQ Servicing*, 653 F. Supp.2d 1047, 1053 (E.D. Cal. 2009). Therefore, plaintiff's wrongful foreclosure claim must be dismissed.

### 5. Breach of the Covenant of Good Faith and Fair Dealing

In his fifth claim for relief, plaintiff alleges that defendants violated the statutory covenant of good faith and fair dealing. Compl. ¶ 19. Specifically, plaintiff claims that although plaintiff contacted defendants on numerous occasions with Qualified Written Requests, defendants have refused to comply with plaintiff in good faith. *Id.* ¶ 20.

Loanstar and Wells Fargo move to dismiss this claim, arguing that plaintiff cannot state a claim for breach of the covenant of good faith and fair dealing since such a covenant is a contract term and plaintiff fails to allege the existence of any contract between plaintiff and Loanstar or Wells Fargo. Dckt. No. 9 at 14; Dckt. No. 11 at 16-17. Further, Loanstar and Wells Fargo contend that to the extent plaintiff seeks to state a claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, based on defendants' purported failures to respond to plaintiff's Qualified Written Requests, such a RESPA claim is time-barred, is conclusory, and is devoid of any facts in support thereof. Dckt. No. 9 at 15; Dckt. No. 11 at 17. Under California law, "[t]he prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties." *Smith v. City & County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990). The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract."

12

*Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093-94 (2004).

Here, plaintiff's good faith and fair dealing claim appears to be once again based on his theory that defendants conducted a wrongful foreclosure without being the "holder in due course," which as discussed above, is not cognizable and cannot therefore be the basis for a claim that defendants violated the covenant of good faith and fair dealing. More fundamentally, plaintiff has not alleged a contract between plaintiff and Loanstar or between plaintiff and Wells Fargo, and has not alleged that defendants failed to comply with any purported contract. Therefore, plaintiff cannot state a claim against them for breach of the covenant of good faith and fair dealing.

Further, to the extent plaintiff claims that Loanstar or Wells Fargo breached a fiduciary duty to plaintiff, that claim fails. "In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action." *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991). Plaintiff has not alleged facts suggesting that any of the defendants stepped beyond the traditional role of a money lender or servicer, and therefore, has not sufficiently pled a claim for breach of fiduciary duty.[5]

---

[5] To the extent that plaintiff's reference to defendants' failure to respond to his "Qualified Written Requests" suggests that he seeks to assert a claim under the Real Estate Settlement Procedures Act ("RESPA"), that claim also fails. Plaintiff has not alleged any actual RESPA claim, and has not provided any information about what may have been contained in the purported "Qualified Written Requests," to whom they were sent, by what method, what information the "Qualified Written Requests" sought, or when they were sent. Moreover, plaintiff's purported "Qualified Written Requests" appear to be connected to plaintiff's legally unsupported allegations that defendants needed to "validate the purported debt" in order to foreclose on plaintiff's home since defendants were not the "holders in due course." Compl. ¶¶

13

Therefore, plaintiff's claim for breach of the covenant of good faith and fair dealing should be dismissed.

6. <u>Declaratory Relief</u>

Plaintiff also seeks declaratory relief. Compl. ¶¶ 21-23. His request is based on his contentions (1) that the note at issue was "invalid" and "foreclosure and Transfer unlawful, illegal and not in compliance with Federal and State statutes and laws," *id.* ¶ 21.a; (2) that non-judicial foreclosure was "improper in that [defendants] are neither the holder of the original note on the subject property nor a bona fide purchaser of the underlying asset of the note," *id.* ¶¶ 21.b, 22; and (3) that plaintiff "funded the mortgage loan with his Promissory note (Federal Reserve Bank publications and UCC 'negotiable instruments') which Defendants sold and gave back to plaintiff and called [the] illegal transaction [a] 'loan,'" *id.* ¶ 21.c. Loanstar and Wells Fargo contend that such plaintiff's request for declaratory relief has no merit since plaintiff has not set forth any defect in the foreclosure proceedings or any statutory violations. Dckt. No. 9 at 16-17; Dckt. No. 11 at 22.

In seeking declaratory relief, a plaintiff must satisfy a two part test under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, demonstrating that a declaratory judgment is appropriate. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). The court must first determine if an actual case or controversy exists; then, the court must decide whether to exercise its jurisdiction to grant the relief requested. *Id.*

For declaratory relief, there must be a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment. *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Unless an actual controversy exists, the District Court is without power to grant declaratory relief. *Garcia v. Brownell*, 236 F.2d 356, 357-58 (9th Cir. 1956). The mere possibility, even probability, that a

---

19, 20; Dckt. No. 19 at 3.

person may in the future be adversely affected by official acts not yet threatened does not create an "actual controversy." *Id*. Further, declaratory relief should be denied if it will "neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1356-57 (9th Cir. 1985).

Here, the declaratory relief plaintiff seeks is commensurate with the relief sought through his other causes of action. Thus, plaintiff's declaratory relief claim is duplicative and unnecessary. *See Permpoon v. Wells Fargo Bank Nat. Ass'n*, 2009 WL 3214321, at *5 (S.D. Cal. Sep. 29, 2009). In addition, because the contentions underlying plaintiff's declaratory relief request are without basis in fact or law, he cannot establish an actual present controversy that justifies this remedy. Accordingly, there is no real, immediate controversy to adjudicate, and plaintiff's request for declaratory relief should be dismissed.

C.   Leave to Amend

Although a pro se litigant is typically entitled to notice of the deficiencies in the complaint and an opportunity to amend, leave to amend should be denied here because plaintiff's claims are based on plaintiff's non-cognizable and legally inaccurate theories that (1) plaintiff in essence "funded his own loan," and (2) defendants improperly foreclosed on his home since they were not the "holders in due course" of the note at issue, the complaint's deficiencies cannot be cured by amendment.[6] *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (While the court ordinarily would permit a pro se plaintiff to amend, leave to amend should not be granted where it appears amendment would be futile).

III.   Plaintiff's Motion for a Temporary Restraining Order

Plaintiff moves for a temporary restraining order and a preliminary injunction. Dckt. No. 24. However, plaintiff fails to meet the requirements for either a temporary restraining order or a

---

[6] Because the undersigned will recommend that all of plaintiff's claims be dismissed, defendants' remaining arguments in support of dismissal need not be addressed.

preliminary injunction. "The standards for granting a temporary restraining order and a preliminary injunction are identical." *Haw. County Green Party v. Clinton*, 980 F. Supp. 1160, 1164 (D. Haw. 1997); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order). The Ninth Circuit recently modified its standard for preliminary injunctive relief to conform to the Supreme Court's admonition in *Winter v. Natural Resources Defense Council, Inc.*, that the moving party must demonstrate that, absent an injunction, irreparable injury is not only possible, but likely. *Winter v. Natural Resources Defense Council, Inc.*, __ U.S. __, 129 S. Ct. 365, 375-76 (2008); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). Under the new standard, "preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* (quoting *Winter*, 129 S.Ct. at 375-76).

Here, plaintiff's complaint is dismissed without leave to amend; therefore, plaintiff has not shown any likelihood of success on the merits, or even that serious questions have been raised. *See Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1049-50 (9th Cir. 2010). Therefore, the undersigned will recommend that plaintiff's motion for a temporary restraining order and preliminary injunction be denied.

III. CONCLUSION

Accordingly, it is hereby ORDERED that the status (pretrial scheduling) conference currently set for hearing on December 22, 2010, is vacated.[7]

////

---

[7] As a result, the parties are not required to submit status reports as provided in the August 10, 2010 order. *See* Dckt. No. 3. However, if the recommendation of dismissal herein is not adopted by the district judge, the undersigned will reschedule the status conference and require the parties to submit status reports.

It is further RECOMMENDED that:

1. Loanstar and Wells Fargo's motions to dismiss, Dckt. Nos. 9 and 11, be granted;

2. Plaintiff's complaint, Dckt. No. 1, be dismissed without leave to amend;

3. Plaintiff's application for a temporary restraining order and preliminary injunction, Dckt. No. 24, be denied; and

4. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 10, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE